1  SHARTSIS FRIESE LLP
   JOSEPH V. MAUCH (Bar #253693)
2  jmauch@sflaw.com
   KAJSA M. MINOR (Bar #251222)
3  kminor@sflaw.com
   One Maritime Plaza, Eighteenth Floor
4  San Francisco, CA  94111-3598
   Telephone:     (415) 421-6500
5  Facsimile:     (415) 421-2922

6  MCANDREWS, HELD & MALLOY, LTD.
   PETER J. MCANDREWS (*pro hac vice* application forthcoming)
7  JAMES P. MURPHY (*pro hac vice* application forthcoming)
   ANNA M. TARGOWSKA (*pro hac vice* application forthcoming)
8  500 West Madison Street, 34th Floor
   Chicago, Illinois 60661
9  Telephone:     (312) 775-8000
   pmcandrews@mcandrews-ip.com
10
   Attorneys for Plaintiff
11 TQ DELTA, LLC

12                  **UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14

15 *In Re* SUBPOENAS TO            Misc. Case No.
   Intel Corporation
16                                 **NOTICE OF MOTION AND MOTION TO**
   Served in related cases:        **COMPEL OUT-OF-DISTRICT**
17                                 **SUBPOENAS AGAINST INTEL**
   *TQ Delta, LLC v. Adtran Inc.*, D. Del. Case  **CORPORATION**
18 *Nos. 14-cv-00954, 15-cv-00121;*

19 *TQ Delta, LLC v. Zhone Technologies, Inc.*, D.
   *Del. Case No. 13-cv-1836-RGA;*
20
   and
21
   *TQ Delta, LLC v. ZyXEL Communications,*
22 *Inc. and ZyXEL Communications Corp.*, D.
   *Del. Case no. 13-cv-02013-RGA*



CV 17 80099 MISC.

KAW

Case No.       NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-
               DISTRICT SUBPOENAS AGAINST INTEL CORPORATION

1     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2     PLEASE TAKE NOTICE that, as soon as counsel may be heard before the assigned Judge at the assigned time in the assigned department, Plaintiff TQ Delta, LLC ("TQ Delta") will and hereby does move to compel and enforce three subpoenas served on non-party Intel Corporation ("Intel") on January 6 and 22, 2016. Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, TQ Delta brings this motion in this Court because the recipient of the subpoenas, Intel, resides here and compliance is required here.

    This motion is based on this Notice, the Memorandum of Points and Authorities, and the Declarations of Anna M. Targowska, Esq. and Elizabeth M. Rudnick submitted concurrently herewith and in support thereof, and any matters this Court may or must judicially notice.

    TQ Delta is the plaintiff in four actions currently pending in the United States District Court for the District of Delaware, styled *TQ Delta v. Adtran, Inc.*, related cases C.A. Nos. 14-cv-00954 and 15-cv-00121 ("the Adtran case"); *TQ Delta v. Zhone*, C.A. No. 13-cv-01836 ("the Zhone case"); and *TQ Delta v. ZyXEL*, C.A. No. 13-cv-02013 ("the ZyXEL case") (hereinafter collectively referred to as the "Delaware Cases"), alleging infringement of various TQ Delta patents.

    TQ Delta has a principal place of business at 805 Las Cimas Parkway, Suite 240, Austin, Texas 78746.

    Intel Corporation has a principal place of business at 2200 Mission College Blvd., Santa Clara, CA 95954, in this District.

    On January 6 and 22, 2016, TQ Delta served on Intel three subpoenas (one in each Delaware Case) for the production of documents for use in the Delaware Cases, issued from the District Court in Delaware. On February 3, 2016, Intel served on TQ Delta its Objections for each subpoena. As of the filing of this Miscellaneous Action and Motion, Intel has failed to produce many responsive documents.

    Pursuant to Civil Local Rule 37-2, following are TQ Delta's Requests For Production for which it requests relief set forth in full, and Intel's written responses and objections thereto.

- 1 -

Case No.     NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-DISTRICT SUBPOENAS AGAINST INTEL CORPORATION

**REQUEST FOR PRODUCTION NO. 2:**

For each version of Intel[] chips/chipsets, a copy of the most current technical descriptions of such chip/chipset that relate to, describe, or specify the DSL functionalities, including without limitation:

(a) data sheets;

(b) technical documents and/or specifications;

(c) requirements documents and/or specifications;

(d) functional descriptions and/or specifications;

(e) hardware descriptions and/or specifications;

(f) software descriptions and/or specifications;

(g) firmware descriptions and/or specifications;

(h) architecture descriptions and/or specifications;

(i) board-level design documents and/or specifications (e.g., documents showing all components, including one or more of Intel[] chips/chipsets, such as, for example, other semiconductor devices);

(j) reference design documents and/or specifications (e.g., designs showing implementation of all components necessary to enable implementation of DSL functionality while using Intel[] chips/chipsets);

(k) functional and/or block diagrams;

(l) instructions;

(m) component lists and/or selection guides;

(n) programmer's guides;

(o) technical reference manuals;

(p) application notes; and

(q) hardware, software, and firmware release notes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of

Lantiq Semiconductor, and to the extent it purports to include products not specifically identified in the subpoena. Intel's response, herein, is based on the understanding that "Intel[] chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically identified in paragraph 5 of the subpoena.

Intel objects to the Requests to the extent that they call for documents and things that consist of proprietary business information, confidential technical documents, trade secrets, or other confidential information on the ground that the harm in releasing such information greatly outweighs any possible benefit to Plaintiff. The production of such materials, if necessary and appropriate, would be made subject to an appropriate confidentiality agreement and the protective order in the underlying proceeding and only where permitted under the terms of any such other confidentiality agreements or protective orders.

Intel objects to the phrase "technical descriptions of such chip/chipset that relate to, describe, or specify the DSL functionalities" as vague and ambiguous.

Intel objects to this Request to the extent it seeks information already in Plaintiff's possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

Intel objects to this Request to the extent that it is not limited in time.

Subject to the foregoing objections, Intel will produce product briefs and datasheets for Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by [Defendant] from 2010 to 2015 to the extent that they exist and can be located after a reasonable search. Based upon Intel's current understanding of TQ Delta's claims in this case and without additional information from TQ Delta, it is Intel's belief that this production should provide the relevant, necessary information regarding Lantiq chips that TQ Delta is seeking. Intel is willing to meet and confer to determine if additional production is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 3:**

For Intel[] chips/chipsets, all documents identifying, describing, discussing, or relating to whether such chip/chipset, or a product employing such chip/chipset, complies with or does not comply with or implements or does not implement G.998.1, G.998.2, and/or G.998.4, or any

- 3 -

portion thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of Lantiq Semiconductor, and to the extent it purports to include products not specifically identified in the subpoena. Intel's response, herein, is based on the understanding that "Intel[] chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically identified in paragraph 5 of the subpoena.

Intel also objects to the request for "all documents identifying, describing, discussing, or relating to whether such chip/chipset, or a product employing such chip/chipset, complies with or does not comply with or implements or does not implement" as overly broad and ambiguous because it places almost no limits on the subject matter sought. No product is specified, nor are any bounds placed upon the number of documents, or how they might "relate" to compliance with or implementation of the identified standards.

Intel objects to this request to the extent it requires Intel to draw a legal conclusion in order to respond.

Intel objects to this Request to the extent it seeks information already in Plaintiff's possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

Intel objects to this Request to the extent that it is not limited in time.

Subject to the foregoing objections, Intel will produce product briefs and datasheets for Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by [Defendant] from 2010 to 2015 to the extent that they exist and can be located after a reasonable search. Based upon Intel's current understanding of TQ Delta's claims in this case and without additional information from TQ Delta, it is Intel's belief that this production should provide the relevant, necessary information regarding Lantiq chips that TQ Delta is seeking. Intel is willing

- 4 -

| Case No. | NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-DISTRICT SUBPOENAS AGAINST INTEL CORPORATION |

to meet and confer to determine if additional production is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 4:**

For Intel[] chips/chipsets, all documents describing, specifying, discussing, or relating to the following DSL features, functions, or operations:

(a) ethernet-based multi-pair bonding, including for example, features, functions, or operations relating to ITU-T G.998.2 (01/2005) at *Summary*; § 6 *Exceptions to IEEE 802.3ah-2004, clause 61*; § 6.2.2 *Exceptions to clause 61.2.2*; and/or Figure 2; IEEE Standard 802.3ah-2004 at § 61.2.2.5 *PME Aggregation restrictions*;

(b) ATM-based multi-pair bonding of G.992.3, G.992.5 and/or G.993.2, including for example, features, functions, or operations relating to ITU-T G.992.3 (04/2009) at § 7.6.1 *Derived definitions*; § K.2.7 *Control Parameters*; and/or Table C.7-7; Table 7-7; ITU-T G.992.5 (01/2005) at § 7.6.1 *Derived definitions*; § K.2.7 *Control Parameters*; and/or Table C.7-7; Table 7-7; ITU-T G.993.2 (12/2011) at § 9.7 *Delay*; § 9.4 *Interleaving*; § L.2.7 *Control Parameters*; and/or Table 9-3 – *Summary of Interleaver Parameters*; ITU-T G.998.1 (01/2005) at Summary; § 6.1 *Sequencing payload traffic*; § 11.4.1 *Group Provisioning* and/or Figure 4;

(c) impulse noise protection during initialization, including for example, features, functions, or operations relating to ITU-T G.998.4 at § 1 *Scope*; § A.2.2 *TPS-TC configuration in Channel Analysis Phase*; Table A.3; § 3.5 impulse protection against repetitive electrical impulse noise (INP_REIN); § A.2.4.2 *C-PARAMS Message*; § A.2.5.3 *C-PARAMS*; § A.2.3.2 *R-MSG1 message*; and/or Table A.5; and

(d) sharing memory between a retransmission and a deinterleaving and/or interleaving function including for example, features, functions, or operations relating to ITU-T G.998.4 (06/2010) at § Annex C.2.1.3 *O-PMS*; § Annex D.1.1 *Memory (replaces clause C.1.1)*; § 8.2 *Retransmission multiplexer*, § 8.3 *Transmitter retransmission state machine*; § 8.4 *Retransmission Return Channel (RRC)*; Figure 6-1 *Reference model when retransmission is enable in both directions*; and Figure 6-2 *Reference model in the forward direction when retransmission is enable in a single direction*; Figure 6-3 *Reference model in the return direction when retransmission is enabled in a single direction*; ITU-T G.993.2 (12/2011) at § 12.3.5.2.1.3 *O-PMS*; Figure 9-1 – *PMS-TC functional model applicable to single latency mode and dual latency mode*.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of Lantiq Semiconductor, and to the extent it purports to include products not specifically identified

Case No. · NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-DISTRICT SUBPOENAS AGAINST INTEL CORPORATION

1  in the subpoena. Intel's response, herein, is based on the understanding that "Intel[]
2  chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically
3  identified in paragraph 5 of the subpoena.

4      Intel also objects to the request for "all documents describing, specifying, discussing, or
5  relating to the following DSL features, functions, or operations" comprising a large list of
6  extremely lengthy and dense standards, as overly broad and ambiguous because it places almost
7  no limits on the subject matter sought. No product is specified, nor are any bounds placed upon
8  the number of documents, or how they might "relate" to compliance with or implementation of
9  the identified standards.

10      Intel also objects to phrases "Ethernet-based multi-pair bonding," "impulse noise
11  protection during initialization," and "sharing memory between a retransmission and a
12  deinterleaving and/or interleaving function" to the extent they require a legal determination.

13      Intel objects to this Request to the extent it seeks information already in Plaintiff's
14  possession or available to Plaintiff from public sources or from [Defendant] for which the burden
15  of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

16      Intel objects to this Request to the extent that it is not limited in time.

17      Subject to the foregoing objections, Intel will produce product briefs and datasheets for
18  Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by
19  [Defendant] from 2010 to 2015 to the extent that they exist and can be located after a reasonable
20  search. Based upon Intel's current understanding of TQ Delta's claims in this case and without
21  additional information from TQ Delta, it is Intel's belief that this production should provide the
22  relevant, necessary information regarding Lantiq chips that TQ Delta is seeking. Intel is willing
23  to meet and confer to determine if additional production is necessary and appropriate.

24  **REQUEST FOR PRODUCTION NO. 6:**

25      For Intel[] chips/chipsets, all documents identifying, describing, discussing, or relating to
26  source code produced pursuant to the Request No. 5 *supra*, including without limitation
27  schematics (e.g., connectivity and/or interface schematics), diagrams (e.g., functional and/or
28  block diagrams), specifications, reference designs, flow charts, manuals, code descriptions, and

- 6 -

Case No.    NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-
DISTRICT SUBPOENAS AGAINST INTEL CORPORATION

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

descriptions of connectivity of electronic circuits (e.g., netlist).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of Lantiq Semiconductor, and to the extent it purports to include products not specifically identified in the subpoena. Intel's response, herein, is based on the understanding that "Intel[] chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically identified in paragraph 5 of the subpoena.

Intel objects to the Requests to the extent that they call for documents and things that consist of proprietary business information, confidential technical documents, trade secrets, or other confidential information on the ground that the harm in releasing such information greatly outweighs any possible benefit to Plaintiff. The production of such materials, if necessary and appropriate, would be made subject to an appropriate confidentiality agreement and the protective order in the underlying proceeding and only where permitted under the terms of any such other confidentiality agreements or protective orders.

Intel objects to this Request to the extent that it is not limited in time.

Subject to the foregoing objections, Intel will produce product briefs and datasheets for Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by [Defendant] from 2010 to 2015 to the extent that they exist and can be located after a reasonable search. Based upon Intel's current understanding of TQ Delta's claims in this case and without additional information from TQ Delta, it is Intel's belief that this production should provide the relevant, necessary information regarding Lantiq chips that TQ Delta is seeking. Intel is willing to meet and confer to determine if additional production is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 9:**

Summary level documents sufficient to show (and/or the documents that best show) the gross and net sales (in units and dollars), costs, and gross and net profits (actual and forecasted)

for Intel[] chips/chipsets, for each year from introduction to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of Lantiq Semiconductor, and to the extent it purports to include products not specifically identified in the subpoena. Intel's response, herein, is based on the understanding that "Intel[] chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically identified in paragraph 5 of the subpoena.

Intel also objects to the phrases "gross and net sales" and "gross and net profits" as vague and ambiguous. Intel's response to this Request is based on its understanding of the phrases "gross and net sales" and "gross and net profits" to the extent they are used in Intel's ordinary course of business.

Intel objects to this Request to the extent that they seek to impose an obligation on Intel to create wholly new documents solely for the purpose of discovery in the litigation not otherwise created in the ordinary course of Intel's business.

Intel objects to this Request to the extent it seeks information already in Plaintiff's possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel. Intel objects to this Request to the extent that it is not limited in time and seeks financial information for sales more than six years before the filing of this suit.

Subject to the foregoing objections, Intel will produce documents describing sales, in units and dollars, of Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by [Defendant] from 2010 to 2015. Based upon Intel's current understanding of TQ Delta's claims in this case and without additional information from TQ Delta, it is Intel's belief that this production should provide the relevant, necessary information regarding Lantiq chips that TQ Delta is seeking. Intel is willing to meet and confer to determine if additional production

- 8 -

| Case No. | NOTICE OF MOTION AND MOTION TO COMPEL OUT-OF-DISTRICT SUBPOENAS AGAINST INTEL CORPORATION |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 10:**

Summary level documents sufficient to identify the actual and/or forecasted prices of Intel[] chips/chipsets, by U.S. and outside of the U.S., by quarter and/or annum.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of Lantiq Semiconductor, and to the extent it purports to include products not specifically identified in the subpoena. Intel's response, herein, is based on the understanding that "Intel[] chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically identified in paragraph 5 of the subpoena.

Intel objects that the phrase "the actual and/or forecasted prices" is vague and ambiguous because, among other issues, no terms of sale, markets, or time frames are specified. Intel objects to this Request to the extent that they seek to impose an obligation on Intel to create wholly new documents solely for the purpose of discovery in the litigation not otherwise created in the ordinary course of Intel's business.

Intel objects to this Request to the extent it seeks information already in Plaintiff's possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

Intel objects to this Request to the extent that it is not limited in time and seeks financial information for sales more than six years before the filing of this suit.

Subject to the foregoing objections, Intel will produce documents identifying the prices paid by [Defendant] for purchases of Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by [Defendant] from 2010 to 2015. Based upon Intel's current understanding of TQ Delta's claims in this case and without additional information from TQ Delta, it is Intel's belief that this production should provide the relevant, necessary information

regarding Lantiq chips that TQ Delta is seeking. Intel is willing to meet and confer to determine if additional production is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 11:**

Summary level documents sufficient to identify the actual and/or forecasted prices, costs, and gross and net profits of DSL chips/chipsets sold by Intel (and any predecessors) for the following years, depending on the identified standard(s) supported by the chip/chipset (separately for U.S. and outside the U.S.):

Chips/chipsets supporting G.992.3 from January 2001 to the present;
Chips/chipsets supporting G.992.5 from January 2002 to the present;
Chips/chipsets supporting G.993.2 from January 2005 to the present;
Chips/chipsets supporting G.998.1 from January 2004 to the present;
Chips/chipsets supporting G.998.2 from January 2004 to the present; and
Chips/chipsets supporting G.998.4 from January 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Intel incorporates by reference its General Objections.

Intel objects to the definition of "Intel[] chips/chipsets" to the extent that it purports to include products not made or sold by Intel Corporation. Intel also objects to the definition of "Intel[] chips/chipsets" to the extent it purports to include periods prior to Intel's acquisition of Lantiq Semiconductor, and to the extent it purports to include products not specifically identified in the subpoena. Intel's response, herein, is based on the understanding that "Intel[] chips/chipsets" refers to chips made or sold by Lantiq Semiconductor which are specifically identified in paragraph 5 of the subpoena.

Intel objects that the phrase "actual and/or forecasted prices" is vague and ambiguous because, among other issues, no terms of sale, markets, or time frames are specified.

Intel also objects to phrase "costs, and gross and net sales" as vague and ambiguous, Intel's response to this Request is based on its understanding of the terms "costs," "gross sales," and "net sales" to the extent they are used in Intel's ordinary course of business.

Intel also objects to the request for documents "depending on the identified standard(s) supported by the chip/chipset (separately for U.S. and outside the U.S.): Chips/chipsets supporting G.992.3 from January 2001 to the present; Chips/chipsets supporting G.992.5 from

January 2002 to the present; Chips/chipsets supporting G.993.2 from January 2005 to the present; Chips/chipsets supporting G.998.1 from January 2004 to the present; Chips/chipsets supporting G.998.2 from January 2004 to the present; and Chips/chipsets supporting G.998.4 from January 2009 to the present" comprising a list of extremely lengthy and dense standards, as overly broad and ambiguous because it places almost no limits on the subject matter sought. No product and no identification of how the "Chips/chipsets" might support the identified standards is specified.

Intel objects to this Request to the extent that it is not limited in time.

Intel objects to this Request to the extent it seeks information already in Plaintiff's possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

Subject to the foregoing objections, Intel will produce documents describing sales, in units and dollars, of Lantiq chips specifically identified in paragraph 5 of the subpoena that were purchased by [Defendant] from 2010 to 2015. Based upon Intel's current understanding of TQ Delta's claims in this case and without additional information from TQ Delta, it is Intel's belief that this production should provide the relevant, necessary information regarding Lantiq chips that TQ Delta is seeking. Intel is willing to meet and confer to determine if additional production is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 13:**

A copy of each agreement relating to any actual and/or potential duty (or the lack of such duty) on Intel's part to defend, indemnify, and/or hold harmless [Defendant] for patent infringement, including without limitation infringement of DSL standard-essential patents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Intel incorporates by reference its General Objections.

Intel objects on the ground that this Request is overly broad and unduly burdensome in that it calls for Intel to search for and assess information across an exceedingly broad range of agreements.

Intel also objects to this Request to the extent it seeks information that is not relevant to

1  any claim or defense of any party. Any duty by Intel to defend, indemnify, and/or hold harmless
2  [Defendant], to the extent that it may exist, is not relevant to a claim or defense in this action.

3  Intel also objects to the Request to the extent they requires Intel to draw a legal
4  conclusion in order to respond, including a determination of patents to be "DSL standard-
5  essential."

6  Intel objects to this Request to the extent it seeks information already in Plaintiff's
7  possession or available to Plaintiff from public sources or from [Defendant] for which the burden
8  of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

9  Intel objects to this Request to the extent it seeks information already in Plaintiff's
10 possession or available to Plaintiff from public sources or from [Defendant] for which the burden
11 of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

12 Intel objects to this Request to the extent that it is not limited in time.

13 Subject to the foregoing objections, Intel will not be producing any additional documents
14 subject to this Request as they are not relevant to any claim or defense of any party. However,
15 Intel is willing to meet and confer to determine if production is necessary and appropriate.

16 **REQUEST FOR PRODUCTION NO. 18:**

17 All communications between Intel and [Defendant] (including respective counsel for
18 Intel and [Defendant]) concerning, relating to, or discussing TQ Delta, TQ Delta's patents, or
19 this litigation.

20 **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

21 Intel incorporates by reference its General Objections.

22 Intel objects on the ground that this Request is overly broad and unduly burdensome in
23 that it calls for Intel to search for and assess information across an exceedingly broad range of
24 custodians. Intel has thousands of employees.

25 Intel also objects to this Request to the extent it seeks information protected from
26 disclosure by the common-interest privilege and/or any other applicable privileges or protections
27 from discovery.

28 Intel objects to this Request to the extent it seeks information already in Plaintiff's

possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

Intel objects to this Request to the extent that it is not limited in time.

Subject to the foregoing objections, Intel will not be producing any additional documents subject to this Request at this time as they are not relevant to any claim or defense of any party and are protected by the common-interest privilege and/or other applicable privileges or protections from discovery. However, Intel is willing to meet and confer to determine if production is necessary and appropriate.

**REQUEST FOR PRODUCTION NO. 20:**

A print out of each directory, index, file control document, and/or version control document containing, listing, or referencing electronically stored information responsive to Request For Production Nos. 1-19, and documents sufficient to show the location(s), custodian(s), type(s), and manner of organization of such responsive electronically stored information. The foregoing includes documents sufficient to show the hierarchical file structure for such files.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Intel incorporates by reference its General Objections.

Intel objects on the ground that this Request is overly broad and unduly burdensome in that it calls for Intel to search for and assess information across an exceedingly broad range of products, files, file types and systems and to create documents that do not otherwise exist.

Intel objects to this Request to the extent it seeks information already in Plaintiff's possession or available to Plaintiff from public sources or from [Defendant] for which the burden of obtaining such information is the same or less for Plaintiff as it is for non-party Intel.

Subject to the foregoing objections, Intel will not be producing any additional documents subject to this Request at this time as they are not relevant to any claim or defense of any party. However, Intel is willing to meet and confer to determine if production is necessary and appropriate.

TQ Delta's accompanying Memorandum of Points and Authorities in Support of its Motion to Compel provides the detailed basis for TQ Delta's contention that it is entitled to the requested discovery and shows how and why the other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.

TQ Delta respectfully requests that this Court enter an order requiring Intel to produce all documents responsive to the subpoenas within fourteen (14) days of the Court's order, and that the Court award movant all other relief to which it is entitled, including movant's reasonable attorney fees in bringing this motion.

Dated: July 28, 2017

SHARTSIS FRIESE LLP

By: JOSEPH V. MAUCH

Attorneys for Plaintiff
TQ DELTA, LLC