UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE SUBPOENAS TO INTEL CORPORATION,

Case No. 4:17-mc-80099-KAW

**ORDER GRANTING IN PART AND DENYING IN PART TQ DELTA'S MOTION TO COMPEL SUBPOENA DUCES TECUM**

Re: Dkt. Nos. 1, 48

On July 28, 2017, Plaintiff TQ Delta, LLC filed a motion to compel compliance with the subpoenas issued against non-party Intel Corporation. (Dkt. No. 1.) The subpoenas were issued on January 6 and 22, 2016 in connection with four patent infringement cases pending in the District of Delaware: *TQ Delta, LLC v. Adtran Inc.*, Case Nos. 14-cv-00964-RGA, 15-cv-00121-RGA; *TQ Delta, LLC v. Zhone Technologies, Inc.,* 13-cv-01836-RGA; and *TQ Delta, LLC v. ZyXel Communications, et al.,* 13-cv-02013-RGA. *Id.* at 1. After the motion to compel was filed, Intel produced over 60,000 pages of documents, many of which were highly relevant. On November 22, 2017, the parties filed a supplemental joint letter setting forth the remaining requests at issue. (Joint Letter, Dkt. No. 48.)

On February 15, 2018, the Court held a hearing, and, having considering the parties' arguments, for the reasons set forth below, GRANTS IN PART AND DENIES IN PART Plaintiff's motion to compel.

## I. BACKGROUND

TQ Delta filed complaints against defendants Adtran, Inc., Zhone Technologies, Inc., and ZyXEL Communications, Inc. ("Defendants") in the District of Delaware, alleging infringement of up to 32 U.S. patents. *See TQ Delta v. Adtran, Inc.*, Case Nos. 14-cv-00954 and 15-cv-00121

("Adtran case"); *TQ Delta v. Zhone*, Case No. 13-cv-01836 ("Zhone case"); and *TQ Delta v. ZyXEL*, Case No. 13-cv-02013 ("ZyXEL case") (hereinafter collectively referred to as the "Delaware Cases"). The asserted patents and accused products relate to digital subscriber line ("DSL") technology, which is used to provide high-speed broadband Internet access and video services via copper wires of a local telephone network. The International Telecommunication Union ("ITU") has adopted a number of industry standards relating to how various DSL technologies work to receive, process and/or deliver communications signals over DSL networks. The ITU refers to these various DSL standards with acronyms or other esoteric names and numbers, such as ITU-T G.992.3 (ADSL2), ITU-T G.992.5 (ADSL2+), ITU-T G.993 .2 (VDSL2), ITU-T G.998.1 (G.bond AMT), ITU-T 998.2 (G.bond Ethernet), and ITU-T 0.998.4 (G.inp) (collectively, "DSL Standards").

The Delaware Defendants make, use, sell, offer for sale, and/or import products that operate in accordance with one or more of the DSL Standards, such as DSL modems, gateways, and routers, and DSLAMs (devices used at a service provider's central office to provide broadband service) (collectively "DSL Products"). TQ Delta has accused Defendants' DSL Products of infringing TQ Delta's patents-in-suit based, in part, on the fact that Defendants' DSL Products perform and/or are capable of performing patented functions related to the DSL Standards.

Defendants' DSL Products include and utilize semiconductor chips or chipsets that are designed to perform at least a portion of the relevant DSL functions of the DSL Products. Thus, TQ Delta is seeking to discover technical information regarding the relevant structure and function of the chips used in the DSL Products, including the firmware or software running on such chips, as evidence of Defendants' infringement. TQ Delta is also seeking financial and business documents regarding the chips used in the DSL Products as evidence of demand, price, profitability, etc. of the DSL products to calculate reasonable royalty damages incurred by TQ Delta. Some of the chips utilized by Defendants in the Accused Products are manufactured and/or supplied by Intel and/or Lantiq, which Intel acquired in 2015. (*See* Decl. of Anna Targowska, "Targowska Decl.," Dkt. No. 4-5 ¶ 54, Exs. 4-6, 45.)

During discovery in the Delaware Cases, Plaintiff TQ Delta requested relevant information from Defendants about the specific Intel chips used in the accused products. The Defendants responded that they do not have any information in their possession, custody or control showing the details of how the chips in their DSL Products implement the DSL functions. (*See* Targowska Decl. ¶ 55, Exs. 12-14.) Instead, Defendants have insisted that this information is solely in the possession, custody or control of Intel. *Id.*

As a result, in January 2016, TQ Delta served three subpoenas (one in each Delaware case) on Intel, seeking specific technical and financial information about the Intel chips that are used in Defendants' accused products ("Identified Chips"). (Subpoenas, Targowska Decl., Exs. 4-6.)

Since early 2016, TQ Delta and Intel have been in communication, and the parties have entered into a protective order in the Delaware cases. (*See* Targowska Decl. ¶¶ 56-82, Exs. 16-17.)

On July 28, 2017, TQ Delta filed a motion to compel compliance with the subpoenas. (Mot., Dkt. No. 1.) On August 18, 2017, Intel filed an opposition to the motion to compel. (Opp'n, Dkt. No. 14-3.) On September 19, 2017, TQ Delta filed a reply. (Reply, Dkt. No. 33-4.) Thereafter, Intel filed a motion for leave to file a surreply, which was denied. (Dkt. Nos. 40, 46.) In denying the motion for leave, the Court ordered the parties to further meet and confer in light of the thousands of highly relevant pages of discovery Intel produced since the filing of the instant motion, and to file a joint letter should they be unable to resolve the dispute in its entirety. (Dkt. No. 46 at 1.) The parties filed a joint letter on November 22, 2017. (Joint Letter, Dkt. No. 48.) On December 18, 2017, the parties filed a subsequent joint letter addressing questions from the undersigned regarding the cases pending in the District of Delaware. (Dkt. No. 53.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery propounded by subpoena. The subpoena must state the place where compliance is required, which must be within 100 miles of where the subpoenaed party resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 requires that a subpoena be issued by the court where the underlying action is pending, but that challenges to the subpoena are to be heard by the district court where compliance with the subpoena is required. Fed. R. Civ. P. 45(a)(2), (d)(3)(A).

3

## III. DISCUSSION

On November 22, 2017, in light of Intel's massive document production, the parties filed a joint discovery letter to notify the undersigned of the remaining discovery disputes.

### A. Request Nos. 2, 4, and 6: Technical Specifications

Request Nos. 2, 4, and 6 seek "the detailed technical specifications used by the software engineers to write the source code that implements, on the Identified Intel chips, the specific DSL functions identified to Intel in the Subpoenas." (Joint Letter at 1.) TQ Delta continues to seek from Intel the documents specified in its Reply:
- all DoxyGen-generated documentation for the identified program files and products;
- PP32 Instruction Set Architecture (ISA) specification;
- detailed specifications for the firmware running on the VR9 chip; and
- most recent version of the XPTC Firmware Design Specification describing the IMA function for TX and RX, or Ethernet-based multi-pair bonding for the VINAX V2 product; and
- detailed specifications for VINAX V3 firmware; and
- detailed specifications for the GEMINAX V2 firmware.

(Joint Letter at 1 (citing Reply, Dkt. No. 33-4 at 12).) TQ Delta will rely on Intel documents to prove infringement, and is concerned that Intel will "locate" more documents before trial. (Joint Letter at 2.) Thus, it requires assurances that it has all responsive documentation in Intel's possession, custody or control. *Id.*

In response, Intel contends that it conducted a reasonable search for firmware specifications, and has produced every responsive documented it found. (Joint Letter at 3.) Intel cites the declaration of Rudi Frenzel, which describes the search that was performed, which involved Mr. Frenzel and eight employees searching seven different shared network drives and three SharePoint databases. *Id.* (citing Decl. of Rudi Frenzel, "Frenzel Decl.," Dkt. No. 22-8 ¶¶ 6-11, 13-14.). Notwithstanding, TQ Delta seeks additional assurances, by way of declaration, that Intel has searched all locations that would be reasonably expected to include the requested documents. (Joint Letter at 2.) Given that Intel found over 60,000 pages of documents, many of which are highly relevant, after TQ Delta filed its motion to compel, this is a reasonable request. At the hearing, Intel stated that it would provide a supplemental declaration. Accordingly, Intel is specifically ordered to furnish a supplemental declaration that either all locations where responsive

4

1 documents would ordinarily be found have been searched or that all specifications requested by
2 TQ Delta have been produced, and shall do so within 21 days of this order. (*See* Joint Letter at 3.)

Moreover, Intel's demand that TQ Delta needed to specifically identify documents before it would perform more searches is unreasonable. (Joint Letter at 4.) TQ Delta cannot be expected identify Intel's documents, because the documents are in Intel's possesion.

As to the DoxyGen reports, at the hearing Intel offered to install the DoxyGen program on the source code computer, in lieu of producing manual reports, and would do so without qualification or concession by TQ Delta. (Joint Letter at 2, 4.) TQ Delta accepted this offer. Accordingly, Intel is ordered to install the software on the source code computer within 21 days of this order.

### B. Request No. 10: Financial Forecasts

Request No. 10 seeks financial forecast information for all Intel DSL chips that perform the stated DSL functionality. (Joint Letter at 5.) TQ Delta claims that Intel only produced one document related to forecasts, and it only related to Adtran. *Id.* TQ Delta requests all forecast information for all identified chips, including Defendants Adtran, Zhone, and ZyXEL. *Id.* TQ Delta claims that general information is relevant to its damages analysis pursuant to the FRAND (fair, reasonable, and non-discriminatory damages) theory, because forecasts restricted to a single customer may not provide the information necessary to allow the setting of a non-discriminatory rate. *Id.* At the very least, TQ Delta requests that Intel produce the financial forecast documents for all identified chips for 2010. *Id.*

Intel contends that it is not a party to the Delaware litigation, and the information is not from the time period relevant to the damages, because it is three years after the alleged date of first infringement. (Joint Letter at 5.) At first blush, this is unavailing, because the infringement presumably continued to 2010. Indeed, Intel concedes that, in an effort to avoid the present motion, it produced forecasts information for chips sold to Adtran from the earliest quarter available, which was in 2010. (Joint Letter at 6.) That information was obtained by a manual search that took one day. *Id.* Lantiq estimates that it would take 11 full days of work to provide the information that TQ Delta now demands. *Id.* At the hearing, Intel argued that the forecast

5

information was not available to Defendants, and that it had already produced its actual sales figures to TQ Delta. Additionally, the Court notes that the chips/chipsets are components of the accused products, so the undersigned is not persuaded that the potential relevancy of Intel's forecast documents outweighs the burden associated with the collection, in light of the fact that the actual sales figures have been produced along with the forecasts for one quarter in 2010.

Accordingly, the motion to compel supplemental responses to Request No. 10 is denied.

### C. Request Nos. 13 and 18: Indemnification Documents

TQ Delta is requesting documents related to the indemnification obligations between Intel and any Defendants, including correspondence involving any such indemnification obligations. (Joint Letter at 6.) TQ Delta contends that the Supply Agreement between Intel and Adtran contains an indemnification clause, such that "the requested information is relevant at least because it will show whether Adtran instructed Intel to make products that are compliant with DSL standards, which TQ Delta is relying on, at least in part, to prove infringement." (Joint Letter at 6-7.)

Intel contends that the documents sought are subject to the common interest privilege. (Joint Letter at 7.) "Participants in a joint or common defense or individuals with a community of interests . . . may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy," and their communications will be protected by the attorney-client privilege. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citations omitted). The common interest privilege applies where "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* (citations omitted). The joint defense theory is not limited to parties to litigation, but can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications," and "is applicable whenever parties with common interests join[] forces for the purpose of obtaining more effective legal assistance." *Id.* Here, the Court agrees that Intel and the defendants share a common interest in their position that the accused products do not infringe on TQ Delta's patents. (Joint Letter at 7.) Furthermore, Intel's argument

that indemnity is contingent on TQ Delta proving infringement, rather than the other way around, is compelling. *Id.* Intel's point that TQ Delta can simply ask whether Adtran instructed Intel to make products that are compliant with DSL standards is similarly well taken. *Id.*

Accordingly, TQ Delta's request to compel the indemnification documents is denied. Intel, however, is ordered to produce a privilege log within 21 days that complies with the Federal Rules of Civil Procedure. Specifically, the privilege log must identify "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Intel does not have to provide a description of the subject matter of each document to meet its burden. *See id.* If, upon receipt of the privilege log, TQ Delta does not believe that all documents are subject to the common interest privilege, the parties shall meet and confer and, should they be unable to resolve the matter informally, they shall file a joint letter regarding the disputed documents, which shall indicate how many documents and pages are at issue. The Court will determine at that time whether it must perform an in camera review to resolve the dispute.

### D. Request No. 20: Location of Responsive Documents

Request No. 20 seeks the identification and location of responsive documents at Intel, and how Intel organizes its documents. (Joint Letter at 8.) TQ Delta claims that this information will allow it to verify that all responsive documents were found and produced, because Intel refuses to state that it has produced all relevant documents. *Id.*

In opposition, Intel contends that not only is this request not relevant to any claim or defense, it has produced all documents located through extensive searching in the categories identified in Section A of the joint letter. (Joint Letter at 8.) Intel further contends that TQ Delta abandoned this request in its reply brief and did not discuss it during the latest meet and confer ordered by the Court. *Id.* These arguments are well taken. Moreover, at first blush, the production of this information would be unduly burdensome.

Notwithstanding, the Court finds that a supplemental declaration from Mr. Frenzel stating

7

that Intel has produced all reasonably obtainable responsive documents should satisfy TQ Delta. (*See* Joint Letter at 8.)

Accordingly, TQ Delta's motion to compel a supplemental response to Request No. 20 is denied.

### IV. CONCLUSION

In light of the foregoing, the Court orders Intel to perform the additional searches and subsequent document productions, as described above, within 21 days of this order. Intel shall also produce a privilege log within 21 days of this order.

IT IS SO ORDERED.

Dated: February 20, 2018

KANDIS A. WESTMORE
United States Magistrate Judge